# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION, | ) ) ) | |
| Appellant, | ) ) | |
| v. | ) ) | No. 05 C 4417 |
| NSC CREDITOR TRUST, | ) ) | ) |
| Appellee. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on General Electric Capital Corporation's ("GE") appeal of a bankruptcy court's ruling. For the reasons stated below, we affirm the bankruptcy court.

## BACKGROUND

National Steel Corporation ("National") entered into bankruptcy. In the bankruptcy proceedings, various deadlines were set in National's first amended joint plan of liquidation ("Plan"). The Plan provided that administrative claims needed to be filed by January 19, 2004. GE claims that it entered into an agreement with National under which GE would be given an extension for the filing of

1

administrative claims until January 26, 2004. According to GE, the extension provided time for GE and National to investigate the circumstances giving rise to GE's claim and to attempt to settle any disputed issues. GE also claims that during the extension period, National agreed that no distributions were to be made to any creditors. On January 26, 2004, GE filed an application for allowance and payment of an administrative expense claim ("Application") and thereafter National filed an objection to the Application with the bankruptcy court. GE contends that National's initial objection and National's subsequent supplemental objections did not include an objection based upon the timeliness of the Application.

GE claims that the parties then entered into discovery to prepare for trial, and during discovery GE realized that the amount it sought in the Application was not sufficient. GE filed a motion for leave to amend the Application to include two additional legal theories. On April 26, 2005, National objected to the motion to amend and filed a motion to strike the Application based upon the untimeliness of the Application. According to GE, the motion to strike was filed over a year after the deadline set for the filing of objections to the Application. On May 11, 2005, the bankruptcy court denied GE's motion to amend and granted National's motion to strike the Application without giving GE an opportunity to file a response. GE then filed a motion for reconsideration, which was denied by the bankruptcy court. The bankruptcy court awarded National costs as the prevailing party with respect to the Application. GE has appealed this matter to this court seeking a review of the

bankruptcy court's rulings on May 11, 2005, which denied GE's motion to amend and granted National's motion to strike. GE also seeks a review of the bankruptcy court's rulings on June 24, 2005, that awarded costs to National and denied GE's motion for reconsideration.

## LEGAL STANDARD

A federal district court has jurisdiction, pursuant to 28 U.S.C. § 158, to hear appeals from the rulings of a bankruptcy court. On appeal, the district court reviews the factual findings of the bankruptcy court under the clearly erroneous standard and reviews the bankruptcy court's legal findings under the *de novo* standard. *In re A-1 Paving and Contracting, Inc.,* 116 F.3d 242, 243 (7th Cir. 1997).

## DISCUSSION

### I. Motion to Strike and Motion to Amend

Instead of selecting its best arguments regarding the motion to strike and the motion to amend, GE has presented the court with a vast array of arguments regarding the motion to strike and motion to amend, apparently hoping that in the wide spray of arguments presented to the court, one argument will succeed. However, GE cannot prevail on appeal simply because it has come up with the largest number of alternative arguments.

To begin, GE argues that the bankruptcy court erred in granting National's motion to strike because GE did not have an opportunity to respond to the motion to strike. GE also complains about the enforcement of the Plan deadlines, argues that National should have been estopped from objecting to the Application, argues that National waived its right to object to the Application, and argues that GE's untimely filing of the Application was due to excusable neglect. GE also asks the court to consider the equities in this case in general, argues that it should have prevailed under the informal proof of claim doctrine, contends that GE had a right to amend pursuant to Federal Rule of Civil Procedure 15, and finally argues that, in general, GE was denied due process.

### A. Opportunity to Respond to Motion to Strike

GE contends that it was entitled to an opportunity to respond to National's motion to strike before the bankruptcy court ruled on it and that GE was not accorded an adequate opportunity to do so.

### 1. Response by GE

GE begins its opening appellate brief by stating that the bankruptcy court granted the motion to strike without giving GE "an opportunity for the presentation of evidence or argument . . . ." (Applt. Op. Br. 2). GE thus implies that the bankruptcy court granted the motion to strike without giving GE any opportunity to

4

respond. However, further on in GE's opening brief, GE acknowledges facts that make it clear that GE's initial statement was erroneous. GE acknowledges that the bankruptcy court conducted a hearing regarding the motion to strike, thus offering GE an opportunity to orally respond to the motion to strike. (Applt. Op. Br. 15). GE also admits that it had sufficient notice of the motion to strike to address the motion to strike in its reply brief for its motion to amend. However, instead of addressing the merits of the motion to strike in the reply brief, GE admits that it simply indicated that it would "respond to the Motion to Strike pursuant to an appropriate briefing schedule." (Applt. Op. Br. 15). The bankruptcy court is provided with discretion to set the briefing schedule for motions before it and GE improperly presumed that it could simply decline to respond in writing to the motion to strike on May 10, 2005 and unilaterally dictate when it would respond.

### 2. Thirty-Day Notice Requirement

GE argues that the bankruptcy court failed to abide by Federal Rule of Bankruptcy Procedure 3007 ("Rule 3007"). Rule 3007 provides in part that "[a]n objection to the allowance of a claim shall be in writing and filed [and that] [a] copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant, the debtor or debtor in possession and the trustee at least 30 days prior to the hearing." Fed. R. Bankr. P. 3007. GE argues that, although National styled its request to deny the Application as a motion to strike, the request

in essence was simply an objection to the Application based upon untimeliness. The motion to strike was filed and served on April 26, 2005 and the bankruptcy court ruled on the motion to strike on May 11, 2005, fifteen days later which did not comply with the thirty day requirement of Rule 3007. However, Federal Rule of Bankruptcy Procedure 9006 ("Rule 9006") provides the following:

(1) In general

Except as provided in paragraph (2) of this subdivision, when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of court, *the court for cause shown may in its discretion with or without motion or notice order the period reduced.*

(2) Reduction not permitted

The court may not reduce the time for taking action pursuant to Rules 2002(a)(7), 2003(a), 3002(c), 3014, 3015, 4001(b)(2), (c)(2), 4003(a), 4004(a), 4007(c), 8002, and 9033(b).

Fed. R. Bankr. P. 9006(c) (emphasis added). Under Rule 9006 a bankruptcy court is not specifically prohibited from reducing the notice period in Rule 3007. In the instant action, when the parties appeared for the status hearing on May 10, 2005, the court informed GE that it was going to rule at that time thereby informing GE that the thirty-day notice requirement of Rule 3007 was being reduced. Rule 9006 also specifically provides that a court can make the reduction "in its discretion with or without motion or notice." *Id.* Thus, the bankruptcy court was not obligated to provide GE with additional prior notice of the time reduction. Therefore, the bankruptcy court did not violate Rule 3007 by finding cause shown to reduce the thirty-day requirement and ruling on the motion to strike on May 11, 2005.

## B. Effect of Plan Deadlines

GE next argues that National could not file its untimely objection to the Application because it violated the Plan deadlines. However, the Plan was nothing more than a schedule approved by the bankruptcy court for the proceedings. The court had discretion to adjust the schedule as it saw fit. GE cites no authority that would indicate otherwise or that the Plan dates could not be altered and was legally binding on the bankruptcy court. GE must do more than complain of unfairness because National did not comply with the precise Plan dates. GE must point to law that supports its appeal and in this regard GE has failed to do so. (Applt. Op. Br. 15-16). GE cites *In re Harvey*, 213 F.3d 318, 321 (7th Cir. 2000) for the proposition that "[t]he provisions of a confirmed plan bind the debtor and creditors in the same manner as a contract." (Applt. Op. Br. 17). However, such a rule does not prevent a bankruptcy court from altering the schedule of a confirmed plan as it deems necessary and appropriate. GE complains that the bankruptcy court enforced certain provisions of the Plan regarding the filing of the Application, but did not enforce other provisions of the Plan regarding the filing of objections. However, each of the determinations made by the court complained of by GE were distinct issues. The bankruptcy court, in its discretion, could have determined that National's objection to the Application, based upon the untimeliness should have been considered despite the Plan deadlines. Also, in its discretion, the court could have decided that the untimeliness of the Application would have sufficiently disrupted the proceedings

7

and prejudiced the parties that the Application be stricken. *See in re Plunkett*, 82 F.3d 738, 741 (7th Cir. 1996)(stating that "[l]ate-filed claims, especially in the bankruptcy context, disrupt orderly discharge and should generally be barred")(quoting in part *In re Unroe,* 937 F.2d 346 (7th Cir.1991)). GE has not shown that any of the bankruptcy court's rulings were arbitrary or that the bankruptcy court abused its discretion. *See in re De Vries Grain & Fertilizer, Inc.*, 12 F.3d 101, 105 (7th Cir. 1993)(stating that "Chapter 11 provides for reorganization with the aim of rehabilitating the debtor and avoiding forfeitures by creditors [and that] [i]n overseeing this latter process, the *bankruptcy courts are necessarily entrusted with broad equitable powers* to balance the interests of the affected parties, guided by the overriding goal of ensuring the success of the reorganization") (emphasis added); *In re Kmart Corp.* 315 B.R. 718, 722 (N.D. Ill. 2004)(citing *In re KMart Corp.,* 381 F.3d 709 (7th Cir. 2004) regarding the "importance of claims-filing deadlines, and the negative consequences of permitting extensions of time").

### C. Waiver of Right to File Objection

GE also argues that National should be estopped from asserting its untimely objection to the Application because National waived its right to do so. GE argues that "[s]tatutory filing deadlines are generally subject to the defenses of waiver, estoppel and equitable tolling." (Applt. Op. Br. 16). However, at issue before us is not a statutory deadline. We are not presented with the issue of, for example,

8

whether or not a claim was brought within a statute of limitations period. Rather the dates at issue are merely the internal scheduling dates in the proceedings for the filing of motions and briefs. GE has not shown the bankruptcy court's ruling in this regard to be in error. The bankruptcy court has discretion to manage the proceedings before it. There was not a waiver of National's right to file an objection simply because the Plan deadline had passed. The bankruptcy court had discretion to determine if allowing a later filing would be appropriate and thereby adjusting the proceeding deadlines as it deemed appropriate. The authority cited by GE regarding the doctrine of waiver and estoppel merely supports the argument that GE could have made to the bankruptcy court at the May 10, 2005 hearing on the motion to strike. However, the bankruptcy court decided to consider the motion to strike. GE cites no authority that applies the doctrine of waiver or estoppel to prohibit a court from extending or reducing the filing dates for certain briefs on motions.

GE claims that it relied upon the Plan as the deadlines for the filing of objections to the Application. However, such reliance was not reasonable reliance since GE should have been aware that the bankruptcy court could adjust the Plan schedule as it deemed necessary. GE also argues that National should be estopped from objecting to the Application based on its untimeliness because National agreed to an extension for the filing of the Application. GE argues that National "through counsel with apparent authority entered into an agreement with [GE], on which [National] knew and expected that [GE] would actually and reasonably rely."

(Applt. Op. Br. 18). GE thus first acknowledges its mistake in proceeding under an informal agreement with National without court approval by stating that National's counsel merely had "apparent authority." (Applt. Op. Br. 18). However, GE's reliance upon such an informal agreement, absent court approval, was not a reasonable reliance. GE does not contend that the court approved its alleged agreement with National to extend the filing period for the Application. Rather GE admits that the "attorneys for [GE] and National Steel, the predecessor in interest to NSC, agreed to extend the deadline for [GE] to file an administrative expense claim by five (5) business days." (Applt. Reply Br. 2). GE, who was represented by counsel, should have been well aware that despite its interactions with National, that if a timeliness issue arose before the bankruptcy court, the court-approved dates in the Plan would be the dates considered by the court. Finally, the doctrine of equitable estoppel is an equitable doctrine and as is explained below, the equities in this matter clearly favored National. Therefore, the bankruptcy court did not err in failing to conclude that National was not estopped from filing the motion to strike or that National waived its right to do so.

## D. Bankruptcy Court Findings of Excusable Neglect

GE argues that the bankruptcy court erred in finding that there was not excusable neglect by GE in failing to file a timely Application. Rule 9006 provides that "when an act is required or allowed to be done at or within a specified period by

these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act *was the result of excusable neglect.*" Fed. R. Bankr. P. 9006(b)(emphasis added). Excusable neglect under Rule 9006 refers to "late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 388 (1993). To determine if the neglect is excusable the court should "tak[e] account of all relevant circumstances surrounding the party's omission [such as] the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*

GE argues that although GE filed the Application after the deadline set forth in the Plan, the bankruptcy court should have allowed GE to file the Application based upon excusable neglect. The bankruptcy court indicated at the May 10, 2005, hearing that the court has to manage the case as it deems appropriate. At the hearing GE asserted that its mistake was due to a mistaken belief that its informal agreement with National regarding the deadlines was controlling. However, the alleged

11

agreement was an informal agreement and GE has not shown that the agreement when formed was disclosed to or approved by the bankruptcy court. GE failed to bother to seek approval of the alleged agreed extension. Whether that failure was due to GE's lack of dilligence or due to a concsious disregard of the Plan, GE is not excused from following the dates established by the bankruptcy court. *See in re Plunkett*, 82 F.3d at 742(stating that "[o]ne ancillary rule is that inattentiveness to the litigation is not excusable).

Also, GE did not seek an extension of the Plan deadlines from the bankruptcy court. Such a mistake is not reasonable or excusable and the bankruptcy court was correct in concluding that GE had not shown excusable neglect. GE was aware of the Plan deadline for the filing of the Application and consciously disregarded the deadline. GE unreasonably believed that it could silently and unilaterally alter court approved deadlines without the court's permission. Few cases would ever be resolved in a timely fashion if the parties could dictate to the court the rate at which they wold proceed. GE argues that Rule 9006 "does not preclude the parties themselves from stipulating to extend time or render any such stipulation or agreement null and void." (Applt Reply Br. 18). GE is correct that, as is true in regard to discovery deadlines in any case, the parties can agree amongst themselves to certain dates. However, that does not mean that a court in turn will necessarily abide by such undisclosed agreements between the parties. The parties, when represented by counsel such as in this case, should understand that they enter into

12

such informal unapproved agreements at their own risk. A court has an obligation to efficiently manage the proceedings before it and need not abide by unapproved agreements amongst the parties. As the Seventh Circuit noted in *in re De Vries Grain & Fertilizer, Inc.*, 12 F.3d 101, 105 (7th Cir. 1993), "Chapter 11 provides for reorganization with the aim of rehabilitating the debtor and avoiding forfeitures by creditors [and that] [i]n overseeing this latter process, the bankruptcy courts are necessarily entrusted with broad equitable powers to balance the interests of the affected parties, guided by the overriding goal of ensuring the success of the reorganization." *Id.* If parties involved in bankruptcy proceedings were allowed to unilaterally bind the bankruptcy court with unapproved agreements, the bankruptcy court would be seriously hindered in its ability to ensure the success of reorganization. The bankruptcy court in this matter also correctly found that an extension of the dates in the Plan would prejudice the debtors. GE also argues that the bankrutpcy court should have held an evidentiary hearing in regard to the excusable neglect issue, but a hearing was not warranted and, as is explained below, GE admits that it never requested an evidentiary hearing. Therefore, the bankruptcy court did not err in finding that GE had not proven excusable neglect.

### E. Balance of the Equities

GE also vaguely asks the court to reverse the bankruptcy court based upon "balancing of the equities." (Applt. Op. Br. 27). GE provides no legal support for

13

its contention that the court could simply disregard all of the above mentioned law and to rule in GE's favor based upon the equities. In any event, the equities in this matter favor National rather than GE. GE was aware of the court approved deadline in the Plan for the filing of the Application and instead of asking the court for an extension of the Plan deadline, GE on its own, dealt with National and attempted to secure assurances from National that GE could make untimely filings. GE thus attempted to unilaterally extend the deadline without court approval. Courts must have discretion to properly manage the proceedings before them. GE also complains that the bankruptcy court should have ruled sooner if it was going to decline to allow the Application, but GE cannot dictate when a court will rule on a matter either. When the motion to strike was filed, GE again came to the hearing not ready to respond to the motion to strike. GE admits that it came to the hearing intending to dictate to the court a briefing schedule for its response. Therefore, the equities in this matter clearly favor National and the bankruptcy court was correct to make its rulings accordingly.

### F. Informal Proof of Claim Doctrine

GE argues that its Application filed on January 26, 2004 constituted an amendment to a previous informal proof claim and thus was timely under the informal proof claim doctrine. A court may utilize the equitable informal proof of claim doctrine "to ameliorate the strict enforcement of the claims bar date." *In re*

*Wigoda*, 234 B.R. 413, 415 (Bankr. N.D. Ill. 1999). In order to constitute "an informal proof of claim a document must (1) have been timely filed with the bankruptcy court and become part of the record, (2) state the existence and nature of the debt, (3) state the amount of the claim, and (4) evidence the creditor's intent to hold the debtor liable." *Id.* The mere fact that the "bankruptcy court, trustee, or debtor may know of the existence of a claim" does not make a claim a proof of claim. *Id.* Under the informal proof of claim doctrine "[a]n informal proof of claim may then become the basis for an amended proof of claim." *Id.*

GE argues that its motion to compel and motion to cure objection which were filed before the Plan deadline for the filing of the Application stated the amount of the claim and GE's intention to hold National liable. First of all, the informal proof of claim doctrine is an equitable doctrine and as is explained above, the equities in this matter weigh heavily against GE. *In re Wigoda*, 234 B.R. at 415 (stating that "[w]hether an informal proof of claim should be allowed is an equitable determination by the Bankruptcy Court"). In addition, neither of the motions referred to by GE could be deemed as informal documents. Also, there were seven court-approved stipulations between National and GE and the 2004 settlement agreements regarding liabilities and GE's claims which indicated that there was no outstanding debt owed to GE. The record shows that the bankruptcy court weighed all of the equities in the proceedings and the bankruptcy court's equitable determination has not been shown to be in error.

15

## G. Right to Amend

GE also argues that it should have been given leave to amend the Application pursuant to Federal Rule of Civil Procedure 15 ("Rule 15"). Pursuant to Rule 15, "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served." Fed. R. Civ. P. 15(a). If a party does not have a right to amend a pleading the "party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." *Id.*

GE argues that the bankruptcy court erred by failing to abide by the directions of Rule 15 that leave to amend should be given "freely." However, GE has not shown that the bankruptcy court failed to consider the instructions provided in Rule 15. In *in re Plunkett*, 82 F.3d 738 (7th Cir. 1996) the court recognized that under Rule 15 "leave [to amend] shall be freely given when justice so requires," but then added that such a rule does not dictate that amendments should be allowed and that "[l]ate-filed claims, especially in the bankruptcy context, disrupt orderly discharge and should generally be barred." *Id.* at 740-41 (quoting in part *In re Unroe,* 937 F.2d 346 (7th Cir.1991)). Therefore, we conclude that the bankruptcy court abided by Rule 15 when denying GE's motion to amend.

## H. Due Process

GE also vaguely asserts in general that it was denied due process when the bankruptcy court denied its request to amend and granted National's motion to strike. A party has a fundamental right to due process which means that the party must be given "the opportunity to be heard at a meaningful time and in a meaningful manner." *In re Hancock*, 192 F.3d 1083, 1086 (7th Cir. 1999). GE was afforded an opportunity to orally present its position to the bankruptcy court and GE has cited no authority that would indicate that under the circumstances of this case, GE was entitled to any further notice or opportunity to respond to the motion to strike. GE's position in regard to the motion to strike turned out not to be a meritorious one, but GE cannot claim that it was denied due process simply to find additional arguments and to obtain a second bite at the apple. GE complains that it was denied the opportunity "to present any briefing or evidence. . . ." (Applt. Reply br. 14). However, due process does not require that a court afford the parties an opportunity to brief every issues that arises during proceedings. Such a requirement would unduly lengthen judicial proceedings and, as is often the case, a party should be able to meaningfully address an argument without the need to engage in lengthy briefing. There has been no showing by GE that briefing would have been needed in regard to the motion to strike and motion to amend. In regard to GE's complaint that it was not allowed to present evidence, there is no indication by GE that an evidentiary hearing was necessary or that the court improperly made findings of fact outside the

17

official record that was before it. Also, National specifically asserts in its brief that GE "never requested an evidentiary hearing." (Appellee Br. 32). GE has not cited to the record where it requested an evidentiary hearing and has not contested this fact in its reply. Although, GE is clearly not satisfied with the manner in which the bankruptcy court managed the deadlines in the proceedings, GE has failed to show that it was denied its due process rights in any regard. GE has failed to show that the bankruptcy court erred in any respect in its ruling on the motion to strike, motion to amend, and motion for reconsideration. Therefore, based upon all of the above, we affirm the bankruptcy court on such rulings.


## II. Award of Costs

GE argues that the bankruptcy court erred in awarding certain costs to National as the prevailing party on the motion to strike. GE objects to the costs awarded to National for condensed transcripts. GE also contends that the award should be reduced because the amount per page for originals and copies of transcripts exceeded the permissible rate. However, GE makes such objections only in a general fashion and has failed to specifically point to the transcripts that GE believes were improperly considered for the cost award. GE has also failed to point to the specific transcripts that it believes were charged at excessive rates. Instead, GE simply makes general statements about the law regarding costs and asks that in regard to all of GE's categories of objections to the costs, that the award amount be

reduced by "not less than $1,276.10." (Applt. Op. Br. 33). GE has failed in its burden as the appellant to provide the court with sufficient detailed information that shows that the bankruptcy court erred in its award of costs. Therefore, we affirm the bankruptcy court's award of costs.

## CONCLUSION

Based on the foregoing analysis, we affirm the bankruptcy court in regard to all appealed issues.


Samuel Der-Yeghiayan
United States District Court Judge


Dated:  December 14, 2005